**Esther SPIKES, Plaintiff-Appellant,**

**v.**

**James M. CLARK, Aline Turner, Patrick H. Pruitt and Iris Pruitt, his wife, Cass Federal Savings & Loan Association of St. Louis, a corporation, and Richard O. Rumer, Trustee, Defendants-Respondents.**

**No. 51692.**

Supreme Court of Missouri,
Division No. 2.

Jan. 9, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 13, 1967.

Donald U. Beimdiek, St. Louis, for plaintiff-appellant; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, of counsel.

Henry Ebenhoh, Walter S. Berkman, St. Louis, for respondents Cass Federal Savings & Loan Ass's of St. Louis, and Richard O. Rumer, Trustee.

BARRETT, Commissioner.

Originally a suit in two counts: (1) a suit to set aside two deeds and two deeds of trust and to quiet the title to a lot and four-family flat known as 5545–47 Etzel Avenue, St. Louis, and (2) an action against James M. Clark in his capacity as a notary public and the surety on his notary bond. The parties did not make a justiciable issue of count two, the trial court "enters no order" with respect to it, and for the purposes of this appeal that ground of recovery has been abandoned and the judgment entered on count one is the final, appealable order. On the first count the court did not in specific terms set aside the two warranty deeds but the court did order the grantees in those two conveyances to "transfer the parcel of real estate" to the plaintiff subject, however, to a deed of trust in favor of Cass Federal Savings & Loan Association. One of the deeds of trust had been released, the court found, as indicated, the other deed of trust to be a valid, operative conveyance as far as the plaintiff was concerned and therefore refused to set that transfer aside. In addition to this relief as to the real estate the court entered a personal judgment of $5782.49 in favor of the plaintiff against the real estate broker-notary, Clark, and the several parties to the two deeds who were also the grantors in the deeds of trust. The plaintiff, Esther Spikes, obtaining all relief asked except the cancellation of the deed of trust to Cass Federal Savings & Loan Association has appealed. Thus the appeal is in fact concerned only with the plaintiff lot owner, Esther Spikes, and Cass Federal Savings & Loan, the beneficiary in the deed of trust and the holder of the described note for $10,-

000.00, and the sole question for decision is whether the court erred in its refusal to set aside that deed of trust.

In brief the facts were that upon her husband's death in 1958 Esther Spikes became the owner of the four-family flat at 5545–47 Etzel Avenue. The property was then subject to a first deed of trust to Prudential Savings & Loan and secured an indebtedness on which there was then due a balance of $2676.58. There was a second deed of trust in favor of Clayton Discount Company securing an indebtedness on which there was a balance due of $1078.-40. The entire building, exterior and interior, was in need of repairs and refurbishing. Esther occupied one apartment, the others she rented, one to Leonard Lewis, a part-time salesman for James Clark. Mrs. Spikes was anxious to sell the property but had been unable to find a buyer at her price of $13,500.00. She was also anxious to go on a vacation trip to California and on March 15, 1964, through her tenant Lewis, entered into a written "sale contract" with J. M. Clark & Son Realty Company to sell the property for the price of $13,500.00. The contract contained the name of Leon Harris as buyer—Harris was in fact a part-time employee of Clark. The recited terms of the contract were an earnest money deposit of $100.00, another payment by the purchaser on closing, August 15, 1964, of $900.00, the seller Spikes accepting as "part purchase money" a $4000.-00 note and deed of trust and, finally, "Subject to the J. M. Clark & Son Realty Co. obtaining a loan or loans for $12,500.00 amortized over a period of eighteen years."

Mrs. Spikes left St. Louis for California on July 8, 1964. Clark took her to the Delmar station and there they engaged in a discussion as to her property. There was some difficulty about an "old mortgage" that had to be cleared up before a loan could be obtained—apparently a paid note but no release of the deed of trust and "Clark said it would cost twenty dollars to have the insurance papers to the bond." They were early for the train's departure

and so Clark ran up to his office in Clayton "to get these papers" for Esther's signature. She insists that he "brought three little white papers back," they were all "insurance papers for the bond for me" and these she signed. She says however that there was no discussion of a warranty deed and she insists that neither on that occasion nor any other occasion did she sign a deed. She also says that there was no discussion as to who or how the payments on the existing obligations and deeds of trust would be made. They did talk about the necessity of certain repairs before the property could be sold but as to these and other necessary payments she said "Clark was advancing it to me and that's why I didn't pay the note (Provident Savings & Loan) at the time I left here."

In any event, Esther went to California and while there Clark called her once or twice and she called him once and he did tell her that "he couldn't get the proper loan" to complete the sale and he asked for and she gave additional time. She returned to St. Louis on August 28, 1964, but went on to Memphis for a week and back to St. Louis on September 5 at which time they discussed repairs, painters and paperhangers and she gave him ten more days in which to find a loan and complete a sale. On September 5 she again went to California and while there received a check for $1000.00 from Clark. She refused to cash the check because "I didn't understand it, the way he said he was sending it out of his own pocket." November 4, 1964, she returned to St. Louis and after checking with Prudential Savings & Loan Association learned that her notes had been paid and the deeds of trust released. The following day she met Clark at Leona Washington's on Aubert Street and while they "discussed about the house and about the check and so forth," he showed her an executed, recorded warranty deed to her Etzel Street property "and said that I signed it" but she said, "I didn't sign no warranty deed for you" but he replied, " 'You

signed it' * * * and snatched it out of my hand."

The deed was dated July 8, 1964, and acknowledged by Clark as notary public on that date and recorded July 9, 1964. Clark says that he delivered the deed to the title company and the company recorded it and he subsequently picked it up at the recorder's office. The deed conveyed the property to Aline Turner who is Clark's sister. Dated July 2, acknowledged by Clark on July 8, recorded July 9, is a deed of trust from Aline Turner to A. Brune securing an $8000.00 note. For this note Brune Realty Company on July 8 wrote three checks, one to Prudential Savings & Loan for $2676.58, one to Clayton Discount for $1078.40 and a third to Clark Real Estate Company for $3765.02. On November 5, 1964, Aline Turner for a purported consideration of $13,500.00, as shown by revenue stamps, conveyed the property to Patrick H. and Iris Pruitt (also relatives of Clark), and this conveyance was acknowledged by Clark. On the same day, acknowledged by Clark, the Pruitts executed the deed of trust involved herein favor of Cass Federal Savings & Loan and securing a note for $10,000.00. With this $10,000.00 the $8000.00 note to Brune, plus interest, was paid. And from it Clark says he paid "the taxes, escrow account, appraisal fee" and a fee to Discount for securing the loan. The balance of $1272.44 Clark deposited in his bank account which with the $3765.02 from Brune totaled $5037.16 for which he has not accounted to Mrs. Spikes. Incidentally, Leon Harris, purchaser in the sales contract, was also a part-time employee of Clark's and none of the grantors and grantees in the warranty deeds received or paid any sum of money—they were all straw parties for Clark.

In these circumstances, as indicated, the court has entered a personal judgment for $5782.49 in favor of Esther and against Clark, Turner and the Pruitts. Upon a specific finding that Clark, Turner and the Pruitts "wrongfully and falsely misrep-

resented the facts concerning the transactions relating to the parcel of real estate" and "wrongfully and fraudulently" placed a deed of trust upon the property, the court has ordered all of these parties to transfer the property to Esther subject, however, to the Cass Federal Savings & Loan indebtedness and deed of trust. Clark has made two or three payments on that note. Mrs. Spikes has made no payments to anyone, paid no rent and the Cass Federal obligation is now in default.

Thus except as to Cass Federal Mrs. Spikes has been awarded the maximum relief asked, even that could be given in the circumstances, that is, title to the property has been restored to her and she has a personal judgment against Clark, Turner and Pruitts which accounts for all sums due her from the Brune and Cass loans not employed in payment of her prior loans, taxes, insurance and repairs. But she is not satisfied with this disposition of her cause because it is all subject to the note and deed of trust held by Cass and she contends that she should have the title to her property restored free even of that obligation. The appellant concedes, tacitly, that under the court's finding she is not entitled to that relief and, therefore, she contends that in the circumstances the court erred in "failing to find that the warranty deed of record to Aline Turner (July 8, 1964) was invalid." She does not contend that Cass Federal's note and deed of trust in and of themselves are void or even invalid for any reason. She makes two basic points but they are interrelated and interdependent and both hinge on her success in setting aside the deed of July 8, 1964. She does not contend that the deed was not physically delivered, she claims that in the circumstances which she details that the court should have found no delivery because there was no intent to deliver and she argues that "the great weight of the evidence supports appellant's pleaded position." The gist of the argument is that the deed from appellant Spikes to Aline Turner is void and therefore all sub-

sequent conveyances and encumbrances are also void; in short, that in the circumstances Cass Federal is not a bona fide purchaser entitled to the protection here afforded by the Court's decree.

To make her position perfectly plain, she claims that in the circumstances of this record the July 8th deed was procured by that species of fraud rendering the instrument void for all purposes: "According to some courts, where the grantor's signature to a deed is procured by fraudulently concealing the character of the instrument as a deed or inducing him to believe he is signing something other than a deed, the instrument is regarded as a forgery and is for that reason absolutely void, conferring no title or right upon the grantee or anyone claiming through or under him. Such instrument, when regarded as a forgery, is invalid in the hands of anyone to the same extent that it would have been if the grantor's signature had been actually forged by a third person." 23 Am. Jur.2d (Deeds) § 142, pp. 188–189. In support of the text and her argument the appellant relies on Horvath v. National Mortgage Co., 238 Mich. 354, 213 N.W. 202, 56 A.L.R. 578, cited in a per curiam by this court in the bizarre case of Branner v. Klaber, 330 Mo. 306, 330, 49 S.W.2d 169, 179. It is not necessary to examine the Horvath case in exhaustive detail, it is sufficient to say that if the grantor there, an illiterate Hungarian immigrant, signed the deed, her signature was "obtained from plaintiff by trickery." Consequently it was held that the grantor "never meant to execute a deed," and, the court said, "The deed was in law a forgery." And, consequently, it was held that subsequent mortgagees were "in no better position as to title than if they had purchased with notice" and so of course the note and mortgage were declared void. It should be noted, however, that in Leidel v. Ballbach, 345 Mich. 201, 75 N.W.2d 860, the Michigan court carefully examined the Horvath case and concluded with the distinction that "where a person knowingly signs a deed

the Horvath case, supra, cannot be invoked to make such signature a constructive forgery." And in a North Dakota case, Hoffer v. Crawford, N.D., 65 N.W.2d 625, the Supreme Court further explained the Horvath case pointing out that its own and predecessor annotations had noted "that there is a divergence of opinion on the question under discussion, the majority of the jurisdictions holding that the procuring of a signature by fraud is not forgery." Annotation 56 A.L.R. 1.c. 582; 14 A.L.R. 1.c. 316 and see the related annotations 57 A.L.R. 759, on the subject "Protection, as against third persons, of grantor tricked into delivering deed without getting cash payment contemplated," and 48 A.L.R. 405 on unauthorized delivery.

■ This is not the place and there is no necessity to precisely distinguish the cases, texts and annotations and spell out their exact meaning, it is sufficient to say that this appeal is to be decided within their framework even though the parties have inadequately explored the general rules there announced. Then too in this connection there is a line of Missouri cases, not cited by the parties, and they too should be noted in passing even though they may not all be readily reconciled. Wineland v. Coonce, 5 Mo. 296; Gordon v. Ritenour, 87 Mo. 54; Craig v. Zimmerman, 87 Mo. 475; Wiggenhorn v. Daniels, 149 Mo. 160, 50 S.W. 807. The Missouri case relied on by the appellant is Delaney v. Light, Mo., 263 S.W. 813, readily distinguishable in that it was a suit between the immediate parties, grantor and grantee, and in fact involved a forged deed and a grantee's name inserted in a blank space by his agent and so it was held that as to a grantee who had paid $4500.00 for a $40,-000.00 piece of property the doctrine of equally innocent parties was not applicable. And finally in recognition of all the applicable rules it should be noted that "a deed executed under the inducement of fraudulent misrepresentations is merely voidable, not void, and may be the foundation of a good title in the hands of one

who takes the conveyance of the land in ignorance of the fraud practiced on the original grantor. * * * Also, a distinction is to be made between cases in which the deed was procured by the fraud of the grantee and those in which it was *delivered to the grantee through the fraud of the grantor's agent,* in whose hands the deed was placed to be delivered only upon performance of some stipulated condition; *the innocent purchaser will be protected in the latter case,* even though he will not be protected in the former case." 23 Am.Jur. 2d (Deeds) § 145, pp. 190–191. Upon this particular record it may have been unnecessary to give recognition to all these rules even though in one way or another the appellant invokes them.

As noted, the plaintiff in her petition pleads as one alternative that if her signature appears on the July 8 deed "it was obtained by Defendant James M. Clark by a trick or device without Plaintiff having any knowledge or information that it was a Warranty Deed." The difficulty with this plea and her counsel's argument is that when it came to her testimony the subject or theory of a trick was not mentioned. Repeatedly on direct examination she said that she signed "three little white (insurance) papers," positively and insistently she said that she did not sign any other paper or document. Even on November 5th, when he showed her the recorded deed, she said, "I didn't sign no warranty deed for you"——by trick or otherwise: "Q. Did you sign a warranty deed that looked like that, Mrs. Spikes? A. No, sir, I did not." And she said that she did not go before a notary public and acknowledge a deed or give one to Clark or to anyone else. To make her position perfectly plain, after she had been recalled in chief a second time, there were these questions and answers on cross-examination:

"Q. In other words, it's not a question of your signing something and not noticing what you signed, is that right?

"A. No.

"Q. Did you sign anything else other than those three papers?

"A. No, I did not that day, no, sir.

* * * * * *

"Q. Did you sign anything else besides those two (three) papers?

"A. That particular day?

"Q. On any day for Mr. Clark.

"A. No.

"Q. Nothing at all? A. No."

And so there was no trick as in numerous cases of substituted, concealed or folded papers, or of signing one document under the distinct impression and belief she was signing another—she simply denied signing the deed or any other document other than the three insurance papers.

Mrs. Spikes admitted the genuineness of her signature on the "sale contract." On several other papers, for example an "affidavit and agreement," she denied her signature or its genuineness. Shown a photostatic copy of the warranty deed by her counsel, Mrs. Spikes said that it was a copy of the deed Clark had shown her on November 5, but she said:

"Q. Now, Mrs. Spikes, on the bottom of the first page of Exhibit 2 (the deed of July 8) there appears some handwriting. Can you recognize that (the signature)? A. No.

"Q. Did you sign a warranty deed that looked like that, Mrs. Spikes?

"A. No, sir, I did not."

From this testimony and throughout the trial it is plain beyond question that Mrs. Spikes denied her signature to the deed of July 8 and this became and is the crux of the case. Clark is hardly worthy of belief, nevertheless he testified that on the day before she left for California Mrs. Spikes signed and acknowledged the deed to Aline Turner. He says that he explained to her the difficulties he had encountered in securing a loan and ultimately a purchaser but "she told me, the last thing she said, to work out the best deal possible for her."

And again and again he testified that she signed and executed the deed, for example, on cross-examination:

"Q. Mr. Clark, the deed that you have testified to was signed by Mrs. Spikes in your presence the day before she left for California?

"A. Yes, sir.

"Q. A photostatic copy of which has been admitted in evidence in this case * * * I am speaking of the warranty deed which bears the date of July 8, 1964, * * *. Would you say you saw Mrs. Spikes sign it the day before she left for California? Was the deed at the time she signed it a conveyance to Aline Turner, as shown in the exhibit?

"A. Yes."

Even though Clark's testimony be discounted, the trial court, nevertheless, specifically found "that the signature of plaintiff Spikes affixed to the Warranty Deed, dated July 8, 1964, is not a forgery and that she signed and executed the same" and, unfortunately for the appellant, that finding is supported by testimony other than Clark's. Called as a defendant's witness, a qualified handwriting expert testified that he had examined Mrs. Spikes' admitted signature on the sale contract and the signature on the "original (not the photostatic copy) warranty deed" and he was positive in his opinion and conclusion:

"A. As a result of the examination and comparison conducted, I arrived at the conclusion that the signature 'Esther Spikes' on Plaintiff's Exhibit 2—

"Q. That is the general warranty deed?

"A. Right. Was executed by the same individual who executed the Esther Spikes signature on Defendant's Exhibit C and D, and Plaintiff's Exhibit 1.

"   *   *   *   *   *   *

"— I reached the conclusion all the signatures were written by one and the same individual.

"   *   *   *   *   *   *

"Q. In your judgment then, all the signatures, including the signature on the warranty deed, the document labeled 'sales contract,' and the two samples of the known handwriting of the plaintiff, are one and the same?

"A. That is correct."

■■ Thus there was a direct conflict in oral testimony, Mrs. Spikes testifying that she had not signed the warranty deed of July 8, not that she was tricked into signing it or that she was fraudulently deceived into executing it, and Clark testifying that she did sign and acknowledge the instrument and the handwriting expert testifying in effect that she had indeed signed it. Disbelieving Clark at least in part, other than Mrs. Spikes' denial and its implications, the expert's testimony is all but uncontradicted. In these circumstances, the ultimate and determinative fact being dependent almost alone on credibility, this is an appropriate occasion to defer to the finding of an experienced judge. Mueller v. Mueller, Mo., 318 S.W.2d 365, 369. Once deference is paid the specific and supported finding "that the signature of plaintiff Spikes affixed to the Warranty Deed, dated July 8, 1964, is not a forgery and that she signed and executed the same," all determinative issues are resolved. This is not to in any manner modify the previously noted general rules, it is only to say that in the particular circumstances of this record, in this court-tried case and review anew (Civil Rule 73.01, V.A.M.R.; RSMo 1959, § 510.310, V.A.M.S.) another and different finding and conclusion could not be confidently reached. The deed having thus been validly executed and delivered, even though by the agency of a species of fraud practised by Clark and his straw-party relatives and employees, was not void and as between the two equally innocent parties, Mrs. Spikes on the one hand and Cass Federal on the other hand, the loss must necessarily fall upon the grantor whose conduct and misplaced confi-

dence initially brought about the circumstances permitting the subsequent misconduct and resulting loss. Leonard v. Shale, 266 Mo. 123, 181 S.W. 16; Godwin v. Gerling, 362 Mo. 19, 239 S.W.2d 352, 361, 40 A.L.R.2d 1250; Klatt v. Wolff, Mo., 173 S.W.2d 933, 938; Bolivar Reorganized School Dist. No. 1 Polk County v. American Surety Co., Mo., 307 S.W.2d 405, 410, 70 A.L.R.2d 1361; 27 Am.Jur.2d (Equity) § 147, p. 683.

Thus likewise finding the facts, after deference, and the consequently necessary conclusions, the judgment accordingly quieting the title (Civil Rule 93.01, V.A.M.R.; RSMo 1959, § 527.150, V.A.M.S.) and determining the rights of the parties is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.