Shirley FLASPOHLER,
Plaintiff-Respondent,

v.

Kenneth S. HOFFMAN and Mercedes E.
Hoffman, and Tri-County Trust Compa-
ny, Defendants-Appellants,

and

Kenneth D. Funk and Helen L. Funk,
Defendants-Respondents.

No. WD33612.

Missouri Court of Appeals,
Western District.

April 5, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 31, 1983.

Application to Transfer Denied
June 30, 1983.

William J. Daily, Glasgow, for defendants-appellants.

Gary G. Sprick, Fayette, for plaintiff-respondent Shirley L. Flaspohler.

Wm. Patrick Cronan, Cronan, Robinson, Lampton & Faber, Fayette, for defendants-respondents Funk.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

DIXON, Presiding Judge.

This appeal is from a judgment in a court-tried case and involves issues of reformation and the effect of reformation on subsequent grantees and mortgagees.

For an understanding of the issues on appeal, a detailed statement of the pleading and judgment is of first importance.

### Plaintiff's Count I

Plaintiff Flaspohler sought reformation of a deed description from Ruth Funk to plaintiff and her deceased husband. The claim was asserted against defendants Kenneth D. Funk and his wife in Kenneth D. Funk's capacity as the heir of Ruth Funk. Plaintiff also alleged that Kenneth D. Funk and his wife had conveyed to defendants Kenneth S. Hoffman and his wife a portion of the land included in the reformed description and that defendants Hoffman had given a mortgage to defendant Tri-County Trust including a portion of the reformed description. The trial court reformed the deed description. Defendants Hoffman and Tri-County Trust have appealed. The issues raised are the sufficiency of the evidence to support reformation and the effect of reformation upon the appealing defendants, Tri-County Trust and Hoffmans. Funks, the grantors, have not appealed.

### Plaintiff's Count II

Plaintiff sought a decree of quiet title to the reformed description against all the de-

fendants. The trial court so ordered. Defendants Hoffman and Tri-County Trust have appealed. The effect of this judgment is to divest Hoffmans of any title and the Tri-County Trust Company of any lien on a portion of the land their deed and mortgage describe.

### Plaintiff's Count III

Plaintiff pleaded alternatively that if no relief were granted under Counts I and II she was entitled to a judgment for the value of improvements made on the disputed tract pursuant to § 524.160 RSMo 1978. The court entered judgment against plaintiff, and no appeal was taken.

### Cross-Claim of Defendants Hoffman

Defendants Hoffman cross-claimed against defendants Funk on the warranty of their deed from Funks. The trial court entered judgment for the defendants Funk. Hoffman has appealed. The issue is the correctness of the trial court judgment denying relief to Hoffmans on the warranties of the deed because, as the trial court found, Hoffmans took with notice of the defect in title. The sole issue on the cross-claim is whether notice of title defect bars an action on the warranties.

The focus of the entire appeal is thus upon the sufficiency of the evidence to support the reformation and the status of defendants Tri-County Trust and Hoffmans as purchasers without notice of plaintiff's claim. If the reformation was improper, the quiet title judgment cannot stand. For comprehension of the dispute and the evidence offered, the physical description and location of the properties must be understood. To assist in that understanding, a replication of a plat submitted to the court with tract numbers superimposed follows. Reference to that plat will aid in comprehension of the conveyances without resort to the cumbersome descriptions.

### Tracts 1 and 2

The E½ of the NE¼ of Sec. 22, Twp. 51, Range 16, W. of the 5th P.M., less and except 6.25 A., in the SW corner thereof, more particularly described as follows, to-wit:

Beginning at the SW corner of the said E½ of the NE¼, run thence N. 12.14 chs. to the road, thence along the W. side of said road, as follows, to-wit:   S. 75° E. 1.50 chs., S. 34½° E. 5.40 chs., to the S. line of the said E½ of NE¼ at a point 6.70 chs. E. of the point of beginning, run thence W. 6.70 chs. to the point of beginning, containing 74.75 A.

### Tracts 3 and 4

Part of the SW¼ of NW¼ of Sec. 23, Twp. 51, Range 16, W. of 5th P.M., described as follows, to-wit:

Beginning at the SW corner of the said SW¼ of NW¼, run thence E. 5.37 chs. to the middle of the County road, run thence along and with the said road as follows:   N. 4.84 chs., N. 53° W. 4.50 chs., N. 4° W. 8 chs., N. 19° W. 4.60 chs. to the intersection thereof with the W. line of the said SW¼ of NW¼ at a point 19.80 chs. N. of the point of beginning, run thence S. 19.80 chs. to the point of beginning, containing 5.75 A., containing in all 80.50 A., more or less, and subject to R/W.

---

Referring to this plat, Ruth Funk and her husband acquired title to all four tracts around 1941. Tracts 1 and 2 are all of the East Half of the Northeast Quarter of Section 22, Township 51, Range 16, except approximately six acres in the Southwest corner of the East Half. That excepted tract is not here involved. Tracts 3 and 4 are part of the West Half of Northwest Quarter of Section 23, Township 51, Range 16, and represent 5.75 acres described by metes and bounds. Ruth Funk's husband died several years before the conveyances in question. Ruth Funk conveyed to Charles Flaspohler and Shirley Flaspohler tracts 3 and 4 by warranty deed in June 1976. Ruth Funk died December 3, 1977; Charles Flaspohler died December 20, 1977.

The deed was drafted by an abstractor who characterized the transaction as one "between neighbors." He prepared the description by reference to the original conveyance to Funks in 1941, which by separate descriptions conveyed two tracts. He inserted the description of the land in the Northwest Quarter Section 23, Township 51, Range 16, the 5.75 acres. No plats or sketches were made, and none were referred to by the scrivener. Ruth Funk's house was on the tract which was conveyed. However, the draftsman had no recollection that the land on which the house was situated was to be included.

Immediately after the conveyance, Flaspohlers occupied tracts 2 and 4 and brush hogged the ground and planted corn, which was harvested in the fall of 1976. In the summer after the sale, a man named Richey did bulldozing work on tracts 2 and 4. The line fence on the south of tracts 2 and 4, which separated the disputed tract and the property of a man named Frank Knapp, was replaced in late 1976, with Charles Flaspohler and Frank Knapp sharing the labor and costs. After Ruth Funk died, Shirley Flaspohler did other bulldozing work on the property in the summer of 1978.

The Flaspohlers did not take possession of tract 3 and, in fact, Ruth Funk's home, in which she continued to live, was on that tract. Don Brundage was Ruth Funk's tenant and did not farm tracts 2 and 4 while Ruth Funk was still alive. Flaspohler was at that time farming tracts 2 and 4. Mary Hoffman, mother of the defendant Hoffman, lived in the area and knew of this activity. Ruth Funk told Brundage she had sold the land south of the road to Flaspohlers. Several other neighbors testified that Ruth Funk told them that she had sold the Flaspohlers the land "across the road" or "south of the road." The road, which is shown on the plat, was a traveled road and even the defendant Hoffman admits that the improvements on the ground south of the road were obvious.

In December 1980 defendant Kenneth Funk and his wife conveyed to defendants Hoffman land that by legal description encompassed tracts 1 and 2. The contract reflects that Kenneth Funk retained the crop to be harvested by Brundage in 1981. Kenneth Funk did not testify at the trial and, although a defendant, has not appealed from that portion of the judgment adverse to him.

Kenneth Hoffman had "his fingers on" the Funk farm for several years. He drove past the land Flaspohlers claim on several occasions. He hunted on tracts 1 and 2 and the Flaspohlers' other land. Flaspohlers say he asked permission to hunt on tracts 1 and 2. Hoffman admits telephoning for permission, but says he only sought permission to hunt on the Flaspohler land south of tracts 1 and 2. Hoffman admits he was aware of the improvements on tracts 1 and 2 and was aware of a piece of machinery belonging to Flaspohlers located on tract 2. He was aware of the wheat crop growing on tract 2 at the time he purchased. He was aware of the relatively new fence on the south. There was an observable difference in the land's condition north and south of the road. The evening after he purchased the land he called Don Brundage. Brundage says Hoffman was then aware of and mentioned a title problem as to the land south of the road. Hoffman says he

called and told Brundage about the sale. He claims that he first became aware of a title problem when Brundage told him the Flaspohler son had the wheat south of the road.

Flaspohlers went to the Department of Agriculture July 27, 1977, and added the acreage in tracts 2 and 4 to the other Flaspohler land. Ruth Funk signed a form agreeing to the transfer of the acreage allotment to reflect a sale of tracts 2 and 4 in the amount of twelve acres.

Kenneth Funk, son and only heir of Ruth Funk, applied for letters of administration December 20, 1977. The appraisers for the estate went to the farm with W.B. Miller, a brother-in-law of Ruth Funk. W.B. Miller, who testified Ruth Funk had told him she had sold the land south of the road, pointed out to the appraisers the boundaries north of the road. One of the appraisers testified that they did not include in the appraisal any of the land south of the road. The legal description in the inventory, however, included tracts 1 and 2. The farming record is far from complete, but one significant fact appears. Donald Brundage entered into a farm lease in October 1979 to plant winter wheat for the estate. The description in the lease covered tracts 1 and 2. At the same time, Donald Brundage planted winter wheat for the Flaspohlers on tract 2. Brundage testified that he accounted to the estate only for wheat grown north of the road and accounted to Flaspohler for the wheat grown south of the road. Brundage continued that tenancy with the estate in the fall of 1980, but the Flaspohler son planted the wheat on tract 2 in the fall of 1980.

### The Reformation Issue

Funks have not appealed this portion of the judgment. Hoffmans and Tri-County Trust Co. have appealed and briefed jointly the issues on the judgments adverse to them.

Hoffmans and Tri-County Trust Co. assert that the claim for reformation is barred by the affirmative defense of laches

pleaded in their answers. The evidence which, it is asserted, supports that defense is that Flaspohlers within a few days of the sale had doubts about the number of acres specified in the description. They consulted the abstractor who prepared the deed, and he told them that the description said "more or less" and not to worry about the problem. Defendants also point to the documents as to acreage allotments, which in 1977 made Flaspohlers aware that twelve acres were involved in the purchased tract rather than the 5.75 acres recited in their deed. The question of laches being one of fact is to be determined from all the evidence and circumstances existing at the trial. *Obernay v. Chamberlin,* 506 S.W.2d 446 (Mo. banc 1974). Standing alone, the evidence as to the discrepancy in acreage might be indicative of neglect in ascertaining the facts. But that evidence does not stand alone. Flaspohlers took possession under the direct view of the grantor. They made improvements of which the grantor must have had knowledge, occurring as they did directly across from the house of the grantor. The grantor agreed in writing to the transfer of twelve acres in the farm allotments. This, together with the assurances of the abstractor, does not show the Flaspohlers did not exercise reasonable diligence in pursuing the matter further and discovering the error sooner. The existence of laches was a question of fact for the trial court and his finding against the fact of laches is implicit in the judgment. Rule 73.01(a)(2); *McNulty v. Heitman,* 600 S.W.2d 168 (Mo.App.1980). The finding will not be disturbed as against the weight of the evidence absent a firm belief that the judgment is wrong. No such belief arises on this record. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ Flaspohlers concede that they have the burden to prove both a prior agreement to convey the land within the reformed description and that there was a mutual mistake of fact in the preparation of the deed. There can be no dispute those two elements are the necessary elements for reformation of a deed. *Hoffman v. Maplewood Baptist Church,* 409 S.W.2d 247 (Mo.App.1966). Defendants Hoffman and Tri-County assert that that proof must be clear, cogent, and convincing, and beyond a reasonable doubt, citing *Brewer v. Blanton,* 555 S.W.2d 381 (Mo.App.1977). As reference to *Brewer v. Blanton* discloses, that language was cited from earlier cases. There are many cases in the books which include the requirement of proof beyond reasonable doubt in reformation cases. The Supreme Court of Missouri, however, as long ago as 1920 in *Brooks v. Roberts,* 281 Mo. 551, 561, 220 S.W. 11, 14 (banc 1920), stated, "Nor does the term reasonable doubt or similar expressions have any place in civil case instructions."

Likewise, *In re Estate of Passman,* 537 S.W.2d 380 (Mo. banc 1976) (per curiam), the court disapproved the use of the term reasonable doubt in connection with the standard of clear, cogent, and convincing evidence required in a gift inter vivos case. That *Passman* so holds is demonstrable by present MAI 3.04 and the committee comment to that instruction citing *Passman.* A case from this court, *Clark v. O'Neal,* 555 S.W.2d 68 (Mo.App.1977), following *Passman,* affirms the impropriety of such language. The burden of proof is the same in a court-tried case as in a jury case, and there is no reason to give a different meaning to clear, cogent, and convincing in a reformation case than in a gift case. The same test has been applied consistently for many years in both types of cases. The test then must be whether the evidence is clear, convincing, and cogent, and the defendants Hoffman and Tri-County Bank's argument based upon reasonable doubt is rejected.

■ In determining whether or not the evidence is sufficient in a court-tried case, this court's review is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *Dehner Urban Redevelopment Corporation v. Dun & Bradstreet Inc.,* 567 S.W.2d 700 (Mo.App.1978). Reviewing the evidence as a whole, the evidence is sufficient for the trial court to have found a prior agreement to convey tracts 2 and 4 and a mutual mistake with respect to the description in-

serted in the deed by the abstractor. The only element of the case that is in the least ·doubt is the existence of a prior agreement to convey the land Flaspohlers now claim. There is no formal agreement that determines the prior intent of the parties. The intent of the parties with respect to the transaction must be garnered from all the facts and circumstances. It has been repeatedly stated that it is sufficient that the parties agreed to accomplish a particular object by the instrument to be executed and that such instrument as executed is insufficient to effect their intention. *Hoffman, supra,* and cases cited therein. All of the facts and circumstances in this case indicate that Ruth Funk intended to convey the land south of the road. She observed without protest the occupation of that ground by the Flaspohlers immediately after the conveyance. She executed a signed agreement to transfer twelve acres of her acreage allotment to the Flaspohlers' acreage allotment. She told neighbors that she had sold the land south of the road or across the road. All of these facts and circumstances support a finding that she intended to convey what the Flaspohlers contend was the agreed-upon land. The deed obviously does not convey that land and satisfies the requirement of mutual mistake. This conclusion is buttressed by the fact that if the deed description were followed, Mrs. Funk would have conveyed her home, which no one claims she intended to do.

In a case involving somewhat analogous facts, *Niemeyer v. Stephens,* 515 S.W.2d 65 (Mo.App.1974), the court affirmed a judgment of reformation in the face of a grantor's testimony that she did not intend to convey anything but the land described. The court disbelieved that testimony, observing that the plaintiff-grantor's testimony was contrary to usual human experience. The court said, "Land is usually bought and sold upon the basis of visually apparent tracts and a description is drawn to convey that which is intended. Plaintiff's testimony was that she intended to sell a legally described portion of her land without reference to or knowledge of where that land was located." *Id.* at 66. There is no dis-

pute Mrs. Funk intended to sell some land. All the facts and circumstances indicate she intended to sell the land occupied by Flaspohlers and not the land upon which her home was located.

## The Issue of Notice as to Tri-County Trust

By a separate point, defendant Tri-County Trust asserts that it was a purchaser without notice and that reformation of the deed from Ruth Funk to Flaspohlers cannot affect its rights under its purchase money mortgage.

▮ Reformation is an equitable remedy, and the principle Tri-County asserts cannot be doubted. No Missouri case has been found in which reformation on the ground of mutual mistake has been granted while excepting from the reformation the lien of a mortgagee without notice. In the analogous situation of fraud in a conveyance, the mortgagee without notice is not bound and the mortgage remains as a lien upon the land. *Spikes v. Clark,* 411 S.W.2d 148 (Mo.1967). Two cases from other jurisdictions reach such a result in reformation cases based on mutual mistake. *Haverstick v. Beaver,* 37 N.E.2d 650 (Ohio App.1941); *Billings v. Billings,* 156 Wash. 505, 287 P. 46 (1930). If Tri-County Trust was without notice, it should not in equity be foreclosed of its lien upon the portion of the land its deed of trust covers which is south of the road. It is admitted there is no constructive notice from the record. The only basis for a finding of notice is the possession of Flaspohlers. So far as the bank is concerned, that must rest upon the presence of a crop of wheat south of the road and whatever that might have meant to the appraiser for the bank. That is simply not enough to show notice of Flaspohlers' claim as far as the bank is concerned. Even if the appraiser from some source understood that the land south of the road was included in the description of the security, a matter the record leaves in doubt, the presence of wheat growing without more gives no notice of an adverse claim. To the extent the judgment denies the lien of the mortgage, it must be reversed.

### The Issue of Notice as to Defendants Hoffman

Hoffmans assert that if they are purchasers for value without notice, reformation may not be sustained. Reformation is permitted when a subsequent purchaser takes with notice of the unrecorded rights of claim of third persons. *Robo Sales, Inc. v. McIntosh,* 495 S.W.2d 420 (Mo.1973); *Walters v. Tucker,* 308 S.W.2d 673 (Mo. 1957); *Kidd v. Brewer,* 317 Mo. 1047, 297 S.W. 960 (1927). The facts known to the purchaser need not be of the precise claim made if they are such that they would impel a person of common sense and prudence to make inquiry. *Walters, supra; Luker v. Moffett,* 327 Mo. 929, 38 S.W.2d 1037 (1931).

The issue of notice is a factual one found adversely to Hoffmans' contention by the trial court. Review of that factual issue is pursuant to *Murphy v. Carron, supra.* The issue on the facts of this case is primarily one of credibility. Hoffman says he discovered the title defect after the conveyance and after his phone calls to Brundage. Brundage says Hoffman knew of the title problem south of the road immediately after the sale. Hoffman was aware of the marked improvement of the tract south of the road. He was aware of the crops and the machinery located there. According to his own testimony, he was in the process of negotiating for the farm for some time. Before the sale he went to the farm and located the boundaries of tracts 1 and 2. He knew, and the abstract discloses, that Ruth Funk had conveyed tracts 3 and 4 to Flaspohlers. He knew she lived in the house on those tracts. The Flaspohlers had been in possession for over four years, a fact known to all in the neighborhood. Again on the issue of credibility, if Shirley Flaspohler's testimony is believed and Hoffman's rejected, as the trial court had a right to do, Hoffman asked for permission from Flaspohlers to hunt on the disputed tract. The finding of the trial court that Hoffman had notice, or at least notice of such facts as would give rise to an obligation to discover the existence of the Flaspohler claim, is supported by substantial evidence. The reformation is supported on this issue.

### Hoffmans' Claim Against Funks for Breach of Warranty of Title

The trial court denied the Hoffmans' cross-claim against the Funks for breach of warranty of title on the ground that Hoffmans were not bona fide purchasers without notice of title defects. The fact that the grantee had notice of possible defect is not, as a general rule, a grantor's defense against the warranty of title. *Hillman v. Hedgpeth,* 600 S.W.2d 625, 629 (Mo. App.1980); *Scott v. Tanner,* 208 S.W. 264 (Mo.App.1919); *Foley v. Smith,* 14 Wash. App. 285, 539 P.2d 874 (1975).

Funks contend that the Hoffmans should be limited to nominal damages because they had notice of possible title defects. They cite *State ex rel. Armour Packing Co. v. Dickmann,* 146 Mo.App. 396, 124 S.W. 29 (1910) in support, but *Dickmann* is no help to the Funks. It discusses a sheriff's liability for nominal damages for false return on a summons and recognizes the rule that in order for there to be a recovery in tort there must be a wrong done and consequent injury. The Hoffmans' cross-claim is not grounded in tort, but rather, under the warranty contained in the deed. The analogous covenant against incumbrances is said to be "treated as one for indemnity." *Kellogg v. Malin,* 62 Mo. 429, 433 (Mo.1876). There is no basis for limiting Hoffmans' recovery to nominal damages under the deed. The issue must be remanded for determination of the amount of damages by the trial court. The parties may wish to consult *Martin v. Jones,* 286 Mo. 574, 228 S.W. 1051 (Mo.1920); *Quick v. Williams,* 219 Mo.App. 336, 271 S.W. 834 (1925); Comment, *Measure of Damages Where Breach of Covenant for Title,* 4 Mo.L.Rev. 194, 197 (1939).

Hoffmans make some contention that the description utilized in the reformation is improper. Insofar as this complaint is directed to the description of tracts 2 and 4, it is without merit. The decree, however, purports to vest title to tract 3 in Hoffmans. There is no basis for such an order; Hoffmans did not seek reformation of their deed, and under the decree of reformation, title to that tract is not affected except

is not applicable

that the reformed deed from Ruth Funk does not convey the tract. The title, therefore, rests in the heirs of Ruth Funk.

The judgment of the trial court is affirmed in part and reversed in part with directions. The decree as to the reformation is reversed and remanded with directions to enter a decree reforming the deed from Ruth Funk to Flaspohlers and quiet title in them to tracts 2 and 4, utilizing the description offered by plaintiffs, subject to the lien of Tri-County Trust on tract 2.

The decree as to the cross-claim of Hoffmans on the warranties of their deed is based upon an error of law and is reversed and remanded for a new trial.

The decree of the court with respect to quiet title is reversed and remanded with directions to re-enter that decree quieting title in Flaspohlers, subject, however, to the rights of Tri-County Trust Co. in that portion of the land claimed by Flaspohlers described in the Tri-County Trust Co. deed of trust.

All concur.