**Clentine BLAISE, Executrix of the Estate of Clarence Blaise, Deceased Plaintiff-Respondent,**

v.

**Danny E. RATLIFF, et al., Defendants-Appellants.**

**No. 45094.**

Missouri Court of Appeals, Eastern District, Division Four.

May 15, 1984.

Tom B. Brown, Edina, for defendants-appellants.

Rolin T. Boulware, Shelbina, for plaintiff-respondent.

KELLY, Judge.

Community State Bank of Shelbina has appealed from the judgment of the Circuit Court of Shelby County cancelling Deeds of Trust on a farm in Shelby County, Missouri which secured two notes of $18,000.00 and $16,000.00, respectively, for loans the Bank made to Danny E. Ratliff and Linda J. Ratliff, his wife. We reverse and remand the cause to the trial court with directions.

This appeal has its genesis in an action instituted by Clarence Blaise to rescind a contract for the sale of a farm to Danny E. Ratliff and his wife, Linda J. Ratliff; for the cancellation of a Warranty Deed from Clarence to the Ratliffs, two Deeds of Trust from the Ratliffs to the Bank; and to quiet title in Clarence. The Bank filed no Answer to Clarence's petition but filed a counterclaim based upon seven (7) promissory notes Clarence had executed to the Bank for loans he had made there aggregating $9,927.37.

After a bench trial, a decree and findings of fact and conclusions of law were filed. The decree adjudged that the contract for sale on the farm was "rescinded, declared null and void and of no force and effect" directed Clarence to refund to the Ratliffs and the Bank the $8,000.00 down payment made by the Ratliffs to Clarence on said contract; and that the abstract of title be returned to Clarence by the defendants.

The decree further ordered that the Warranty Deed made from Clarence to the Ratliffs and the Deeds of Trust securing the Ratliffs' $18,000.00 and $16,000.00 notes be set aside, cancelled, annulled and rendered wholly void and of no force and effect; that the cloud on the title created by said Warranty Deed and Deeds of Trust be removed, and enjoined the defendants from claiming any lien, title or other interest in said property by virtue of said Warranty Deed and Deeds of Trust and from making any further conveyance or encumbrance of said property.

The decree further declared that Clarence was the sole owner in fee simple absolute of the farm property and enjoined the Ratliffs from farming the property and ordered them to give a strict accounting to Clarence of all income they had received from the land since the contract date, to pay to Clarence the landlord's share they had received from the real estate since the contract date, less any real estate taxes they might have paid on the property.

The Ratliffs were ordered to remove themselves from the premises forthwith and to deliver immediate possession thereof to Clarence; they were however, given six (6) months from the date of the decree, October 8, 1982, to remove a double wide trailer they placed on the premises.

The Bank was adjudged on its counterclaim to recover from Clarence on the Notes the sum of Seven Thousand Seven Hundred Fifty-two Dollars and Fifty-six Cents ($7,752.56) plus interest from the date of the respective Notes at the rate of interest provided in said Notes, plus One Thousand Thirty One Dollars and Nine Cents ($1,031.09) as attorney fees.

Costs were assessed against the Ratliffs in favor of Clarence on his Petition and for the Bank against Clarence on the counterclaim.

In its Findings of Fact and Conclusion of Law the trial court found that a confidential relationship existed between Clarence and the Ratliffs; that the Ratliffs took advantage of Clarence's ignorance, mentality and illiteracy to acquire his farm for a consideration of $25,000.00; that this was a grossly inadequate price for the farm; that Clarence was 67 years of age at the time of

the sale, and that the method of payment—Clarence to receive $8,000.00 at the time of the sale and the balance of $17,000.00 to be paid by the Ratliffs in 17 annual payments of $1,000.00 each with no interest was unusual and not the ordinary method of making a real estate contract; that the failure of Clarence to obtain a first lien on the farm to secure the deferred payment was also unusual; that the details of the real estate transaction were never revealed to Clarence nor was it revealed to him that his income would be reduced because of the transaction; that he was never told that the true value of his farm was more than three (3) times what was to be paid to him; that the Ratliffs did not protect Clarence's financial interest, but, rather, secured for themselves the financial advantage in the transaction and were therefore guilty of overreaching and unfairness to Clarence; that the burden of proof of the fairness of the transaction shifted to the Ratliffs to prove the validity of the transactions and they failed to sustain that burden; that the right of rescission of the contract and the cancellation of the Deeds of Trust on the farm is absolute because of the fraud, undue influence, inadequate consideration, unusual provisions, and overreaching of Clarence by the Ratliffs in the transaction; and that Clarence had properly notified the Ratliffs of his election to rescind the contract and to cancel the Deed and Deeds of Trust on Clarence's one hundred (100) acre farm.

On appeal the Bank contends that the trial court erred in setting aside the two Deeds of Trust from the Ratliffs because: (1) the Bank was a bona fide purchaser for value and therefore took free of all defenses except those defenses of which it had actual or constructive knowledge, and there was nothing on record in Shelby County Courthouse on the date when either Deed of Trust was recorded which would impart to the Bank constructive notice of any wrongdoing or of any breach of a fiduciary relationship by the Ratliffs; (2) the trial court in its Finding of Facts found (a) no privity between the Bank and the Ratliffs, (b) no knowledge by the Bank of

the overreaching by the Ratliffs, nor of any fraud, and as between a defrauded grantor and a bank that is an innocent purchaser for value, the loss by reason of a third party's wrongdoing must fall on the grantor whose conduct made possible the wrongdoers' acts.

■ Review of this bench tried action is governed by the principles of Rule 73.01(c) V.A.M.R. and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The trial court's judgment should be affirmed unless there was no substantial evidence to support it, unless judgment was against manifest weight of the evidence, or unless the trial court erroneously declared or applied the law. *Perkins v. Rantz*, 631 S.W.2d 907, 911[1] (Mo.App.1982).

There is, in this appeal, no challenge to that part of the trial court's judgment rescinding the contract of sale of the farm, the refund to the bank of the $8,000.00 loaned to the Ratliffs for the down payment for the purchase of the farm, nor the setting aside of the Warranty Deed from Clarence to the Ratliffs. We have read the record on appeal and conclude that there is substantial evidence supporting this portion of the judgment and believe it is not necessary that we state in detail that evidence.

The trial court made no finding that there was any fiduciary relationship between Clarence and the Bank with respect to this transaction. Nor did it make any finding of wrongdoing on the part of the Bank. There is no finding whether the Bank had either actual or constructive knowledge of the Ratliffs' overreaching nor of any fraud perpetrated on Clarence by the Ratliffs. There is no finding that the Bank was not, as it contends, a bona fide purchaser for value and therefore took free of all defenses except those defenses of which it had constructive notice or actual knowledge.

In disposing of this appeal we initially consider Clarence's contention that the Bank did not file an Answer denying his allegations of fraud nor assert that it was a

bona fide purchaser until after his evidence was introduced and he had rested his case, at which time the Bank requested leave of court to file an Answer to his petition, and therefore, the Bank admitted those allegations of fraud in his petition.

Clarence filed his amended petition on July 21, 1980. On August 18, 1980, the Bank's counsel filed "Consolidated Motions to Dismiss, Make More Definite and Certain and to Strike." On December 3, 1980, the Bank's attorney filed an Application to Withdraw. On December 11, 1980, the Bank's motions were taken up, and overruled and on the same day the motion of the Bank's attorney to withdraw was sustained. The Bank was granted 20 days to further plead. On January 15, 1981 the cause was set for trial on May 11, 1981. On January 19, 1981, the Bank filed its counterclaim. On January 27, 1981, Clarence filed his reply wherein he alleged that he was unable to read or write and that he depended upon his deceased wife, during their marriage, and thereafter upon his brother-in-law, Wayne Ratliff, and his sister, Margaret Ratliff, and Danny and Linda Ratliff, to help him in business matters; that these persons involved him in a series of business transactions which caused him to borrow money from the Bank, and to purchase and sell real estate, and to enter into other business matters culminating in the sale of his farm to Danny and Linda Ratliff and that all of these transactions were misrepresented and full information was concealed from him; that he did not learn of this true situation until the latter part of December, 1979, when he obtained copies of the documents from Margaret Ratliff and the documents were then read to him; that the Bank had or should have had knowledge of these facts.

On January 30, 1981, the Bank filed its Answer to Reply denying these "affirmative defenses" and further alleged that it had no knowledge of said defenses.

The trial commenced on May 11, 1981, with the pleadings in this condition. On May 12, 1981, after the introduction of further evidence, the court recessed until May 18, 1981, at which time the trial resumed. Clarence rested his case and the Bank requested leave to file its Answer. This Answer, in effect, denied all of the allegations of misconduct directed against it in Clarence's amended petition; admitted making the loans to Danny E. and Linda J. Ratliff, that it would have a first lien on the farm for $18,000.00 by reason of its Deed of Trust and that it had a Deed of Trust on the farm for the $16,000.00 loan made to the Ratliffs on November 28, 1979. The Bank further alleged that it was never intended that the Deed of Trust of November 28, 1979, be a second Deed of Trust, but that it would be a third Deed of Trust subject to a Deed of Trust from the Ratliffs to Clarence, and that it was recorded with that intention; that the only reason this Deed of Trust of November 28, 1979 was not a third Deed of Trust was because, unknown to the Bank, Clarence had instructed Fred Bollow, his attorney, not to record his Deed of Trust until January, 1980; that when this was brought to the Bank's attention, the Bank offered to subordinate its Deed of Trust of November 28, 1979, to the Deed of Trust held by Clarence's attorney, and that it was still ready, willing and able to execute a Subordination Agreement for such Deed of Trust of November 18, 1979, but was unable to do so for the reason Clarence has never recorded his Deed of Trust from the Ratliffs to him.

This request to file an Answer was taken under advisement and the Bank introduced its evidence. Clarence introduced rebuttal evidence and the evidence was closed. On September 18, 1981, the trial court again took up the Bank's request to file an Answer and granted leave to the Bank to do so. On this same date Clarence requested findings of facts and filed his suggested findings of fact on that date. The trial court announced its decision on both Clarence's claim and the Banks counterclaim and directed counsel for the respective parties to prepare formal decrees in accord therewith.

Clarence complains that the Bank may not deny fraud or rely on its bona fide

purchaser status because it did not seek leave to file its answer until all of his evidence was in and rested his case. He contends that he was prejudiced by this delay because he was led to believe by the pleadings that the Bank was only seeking to recover on its counterclaim and was not contesting the fraud alleged in his amended petition. He relies on the provision of Rule 55.09, that averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleadings.

■ The trial was commenced on Clarence's Amended Petition with no Answer having been filed and without any request that the Bank be required to comply with the Rule and file its Answer. Under these circumstances this court has held that the failure to file an Answer is effective as an admission only if the plaintiff has objected to such failure; that although the filing of an Answer is mandatory, this requirement is waived unless the opposing party requests enforcement of the mandate by timely and proper action. *Cooper v. Anschutz Uranium Corporation,* 625 S.W.2d 165, 171[4] (Mo.App.1981). Clarence proceeded to trial without objecting to the failure of the Bank to file its Answer, without moving that it be required to do so, and without taking a default. *Great Western Trading Company v. Mercantile Trust Company National Association,* 661 S.W.2d 40, 44[7, 8] (Mo.App.1983). He therefore waived the mandatory filing of an Answer and his complaint is without merit.

Our reading of the record on appeal fails to reveal how Clarence was prejudiced by the granting of leave to the Bank to file its Answer until he had closed his evidence. Nor has he informed us of any evidence he would have offered to overcome any issues raised in the Bank's Answer, which he did not adduce at trial.

■ A bank that loans money to a customer and takes a Deed of Trust to secure that loan, although technically speaking is not a bona fide purchaser for value because it purchases nothing, is in effect an innocent purchaser for value as the result of its loan on the property. A mortgagee of real property is regarded for some purposes as a purchaser and is entitled to the same protection given a bona fide purchaser if it meets certain tests. To be accorded such status, the mortgage must be supported by a valuable consideration, it must have been taken in good faith and without fraud, and the mortgagee must have had neither actual nor constructive notice of outstanding rights of others in the property. *Dreckshage v. Community Federal Savings and Loan Association,* 555 S.W.2d 314, 322[8] (Mo.banc 1977).

From our review of the evidence, we believe that the Bank was a purchaser for value without notice of any infirmities in the purchase of the farm or any overreaching on the part of the Ratliffs in the transaction.

Respondent has never questioned the fact that the Deeds of Trust were supported by valuable consideration; the uncontradicted evidence is that they were.

There was no evidence that the Bank was a party to any fraud and the trial court made no finding that it was. Respondent, however, contends that the Bank had sufficient notice of the Ratliffs' fraud to deprive it of the benefit of a bona fide purchaser for value status.

Respondent, contends however, that the Bank had actual or constructive knowledge of the fraud perpetrated upon Clarence by the Ratliffs by reason of the following circumstances: (1) appellant, over period of twelve months prior to the sale of the farm on August 17, 1979, engaged in at least eleven business transactions and banking activities with Clarence, and every one of the checks drawn on his account with the bank, except for his signature, was handwritten by someone other than Clarence himself; (2) that during this same period most of his assets were transferred to others; (3) that in August, 1978, his financial condition was very good, that he was free from debt and had assets and a net worth of $89,500.00; (4) that during this twelve

month period the Bank saw and participated, either directly or indirectly, in transactions wherein most of Clarence's assets were transferred to others and he was caused to incur more and more indebtedness to the Bank until he reached the point that he had no significant assets, had incurred $22,000.00 indebtedness to the Bank, and was without means to pay this indebtedness; and (5) the Bank, in disregard of the express terms of the sales contract, took an $18,000.00 first Deed of Trust rather than the $8,000.00 first Deed of Trust provided for in the contract for the sale of the farm to the Ratliffs.

The Bank concedes it possessed the following knowledge when it made the loan to the Ratliffs for the purchase of the farm: (1) that Clarence had dealt with them and others in the past in business matters but contends that at no time during these business dealings was there any suggestion that he was incompetent to handle his own business affairs; (2) that it knew Danny Ratliff was Clarence's nephew; (3) that it had been informed by the parties to the contract of sale and by a letter from Fred Bollow that he was representing Clarence in the transaction.

The evidence was that Alta Blaise, Clarence's wife died on February 5, 1978. At that time she and Clarence owned the farm in question, but were living in Shelbina in a house at 300 E. Maple Street. Margaret Ratliff, Clarence's younger sister, and Wayne Ratliff, her husband, lived at 313 E. Maple, in Shelbina. Danny Ratliff is the son of Margaret and Wayne Ratliff; he is Clarence's nephew. Linda Ratliff is Danny's wife and at the time of Alta's death lived in the first house west of Wayne's home and had lived there for about two months. After Alta's death Clarence moved in with the Wayne Ratliffs for a few days and while there saw Danny and Linda Ratliff. Danny and Linda moved onto the farm after borrowing $4,800.00 from another bank in Shelbyville to buy a trailer and move it on the farm. They did this with an understanding with Clarence that Clarence would will him the farm. On March 15, 1978, Clarence and Wayne were in attorney Bollow's office when the will of Clarence was discussed. A will dated March 20, 1978, was prepared wherein Clarence devised the farm to Danny and Linda, and the balance of his estate to Margaret, and in the event she should predecease him, then to Wayne.

On March 13, 1978, attorney Bollow also prepared a contract for the sale of Clarence's house on 300 E. Maple Street, dated March 16, 1978. According to the contract Wayne was to pay Clarence $2,500.00 for the property—$300.00 cash and the balance of $2,200.00 by a note payable in installments of $40.00 monthly at no interest. This balance was evidenced by a note and was to be secured by a Deed of Trust. The note was prepared but never signed and no Deed of Trust was found. The Warranty Deed from Clarence to Wayne and Margaret Ratliff was recorded on July 7, 1978. On the same day the Deed was recorded, the Bank loaned Wayne Ratliff $14,662.51 and took a Deed of Trust on the property.

Clarence purchased the Wayne Ratliff Property at 313 E. Maple Street in August of 1978, and in connection with this sale an application was made to the bank for a $6,000.00 loan. The information on this application was handwritten by Wayne as he received it from Clarence. The form is dated August 21, 1978, and shows the valuation of the farm to be $80,000.00 and lists Clarence's total assets at $89,500.00, with no liabilities, a net worth of $89,500.00. On September 8, 1978, Wayne deposited Clarence's check for $5,000.00 made payable to himself. This check, except for Clarence's signature, was in Wayne's handwriting and bore the notation, "Payment in full for real estate 313 E. Maple." The Deed of Trust securing Clarence's $6,000.00 note is on both the 313 E. Maple property and another piece of property he owned on Birch Street in Shelbina.

Wayne also mortgaged the 300 E. Maple property he purchased from Clarence to the Bank for a $14,662.51 loan.

On October 27, 1978, Clarence also borrowed $6,482.16 from the Bank to purchase

a 1973 Richardson Trailer, which he moved on the farm and took up residence there. On May 16, 1979, he borrowed $1,000.00 from the Bank to pay his share of expenses in planting 70–72 acres of soybeans on the farm. Again, on December 2, 1978, he borrowed $4,933.08 from the Bank on a 1977 Chevrolet pick-up truck, and on February 2, 1979, he borrowed $2,000.00 from the Bank to purchase a refrigerator. On February 7, 1979, Clarence signed as a co-maker on a $4,052.52 loan the Bank made to one Leroy Poague who was to use the funds for the purchase of Clarence's pick-up truck.

On April 6, 1979, Clarence borrowed $1,200.00 from the Bank to purchase a 1973 Plymouth automobile and on May 7, 1979, he borrowed $3,609.37 from the Bank for the purchase of a 706 International tractor. On July 12, 1979, the Bank loaned him $600.00 so he could make payments due the Bank on some of the notes the Bank held.

■ As we understand Clarence's argument, these transactions should have put the Bank on notice that there was some fraud involved in the sale of the farm to Danny E. and Linda Ratliff, and therefore denies it the status of purchaser for value without notice. We disagree.

From these series of transactions, during which Clarence admits he never told any representative of the Bank that he could not read or could only sign his signature, we believe the Bank could conclude that Clarence knew what he was doing, and that he was a good risk. Furthermore, in connection with the loan on the purchase of the farm by Danny and Linda, the Bank was notified by a letter from Clarence's attorney, Fred Bollow, of the details of the sale of the farm. The proposal made to the Bank by Clarence and Danny in the application for the $8,000.00 loan to make the down payment on the farm was consistent with Mr. Bollow's letter.[1]

The Bank knew the purchase price for the farm was $25,000.00, and that prelimi-

narily to making the loan that one of its officers, Jon Best, made a visit to the farm and valued it at $75,000.00 on August 15, 1979. The purchasers were a nephew of the seller and this nephew's wife. The question is whether this was sufficient information as to impart knowledge of fraud to the Bank? We think not.

■ The rule in Missouri is that mere inadequacy of consideration, or even lack of consideration, by itself is not sufficient grounds for setting aside a Deed. "Even if the consideration for a Deed is inadequate, the operative effect of the Deed can not be defeated in the absence of fraud, mistake, undue influence, or some other recognized equitable ground." *Radford v. Radford*, 388 S.W.2d 33, 39 [9] (Mo.1965). The Supreme Court in *Radford*, id, l.c. 38, said "... the showing must be such as to permit a reasonable inference of fraud and not a mere suspicion because when the facts comport as well with honesty as with fraud, the transaction will be deemed to be an honest one."

■ From the evidence we believe the Bank could have reasonably believed that a 67 year old uncle was doing his nephew a favor by selling to him and his wife land for less than its market value. That he did so after consultation with his attorney, and that there was no fraud or overreaching involved in the transaction.

Nevertheless, even though the Bank may be a purchaser for value, it disregarded the terms of the contract of sale to better its own financial position to the detriment of Mr. Blaise, when it took a first Deed of Trust for $18,000.00 on the farm although it knew that the Bank was to have a first Deed of Trust for $8,000.00 and Mr. Blaise was to have a second Deed of Trust for $17,000.00 for the balance of the purchase price. Jon Best, the president of the Bank and the officer of the bank with whom Clarence and Danny dealt, was aware of this by reason of Attorney Bollow's letter

---

**1.** Mr. Bollow died on October 9, 1979, prior to trial and his testimony was not preserved for presentation at trial.

and his negotiations with the parties to the sales contract.

When Danny took the loan application home with him after he and Clarence visited with Mr. Best, the amount of the loan was to be $8,000.00; however, between that time and the date of the loan, Danny decided he needed $10,000.00 more. Without informing Clarence of this additional loan, the Bank agreed to loan Danny and Linda the $18,000.00, had them execute a note in that amount on August 31, 1979, and simultaneously took from them a Deed of Trust on the farm to secure the loan. This Deed of Trust and the Warranty Deed from Clarence to Danny and Linda Ratliff were recorded on September 4, 1979. From this $18,000.00, Clarence received $6,000.00 and a check for $2,000.00 was made payable to the Bollow, Bollow & Wallace Escrow Account. The balance of these monies were used by Danny and Linda for their own purposes.

Subsequently, on November 27, 1979, Danny and Linda made another loan of $16,000.00 from the bank and a second Deed of Trust in that amount was taken on the farm and recorded on November 28, 1979.

At the time Attorney Bollow prepared the Warranty Deed conveying the farm to the Ratliffs a promissory note of the Ratliffs to Clarence for $17,000.00 dated January 2, 1980, and a Deed of Trust also dated January 2, 1980, wherein it is recited that the note is subject to a prior Deed of Trust given by the Ratliffs to the Bank to secure payment of $18,000.00 dated August 31, 1979. A notarial certification on this document is dated January 8, 1980. According to Danny Ratliff the note and Deed of Trust were dated in January, 1980, because of the tax consequences which would be visited upon Clarence in 1979 unless they were dated after the end of the calendar year 1979. Mr. Bollow's secretary testified that prior to his death Mr. Bollow dictated a letter, instructed her to date it January 2, 1980, and signed it prior to his death. The Deed of Trust from the Ratliffs to Clarence was attached to this letter with instructions in Mr. Bollow's handwriting that his secretary was to mail the letter and the Deed of Trust to the Recorder of Deeds on January 2, 1980. This note and Deed of Trust dated January 2, 1980, were retained in the Bollow law firm file from August, 1979, until the day of trial.

At trial Mr. Best testified that he did not discover until December, 1979, or January, 1980, that the record was such that Clarence did not have a Deed of Trust subject only to a prior $8,000.00 lien in favor of the Bank, and at that time the Bank offered to subordinate their loans so that Clarence would have a Deed of Trust securing his $17,000.00 note which would be subject only to the extent of the first $8,000.00 principal of the $18,000.00 Deed of Trust securing the Ratliff's note of August 31, 1979. Prior to trial, on May 7, 1981, the Bank executed a subordination agreement wherein it agreed to subordinate its Deeds of Trusts to Clarence's $17,000.00 lien except as to $8,000.00 principal of the note for $18,000.00 of August 31, 1979. This subordination agreement was introduced at trial by the Bank as an exhibit and has been filed with this court.

According to Mr. Best the Bank would not have made these loans to the Ratliffs had they not owned the one-hundred acre farm for two reasons; (1) they would not have had enough collateral, and (2) without the farm they would not have had enough income to make the payments on that size loan. At the time the property was purchased Danny was 27 years of age and was employed by the Shelbina County R–IV School District earning $577.00 per month as a custodian. Linda was a housewife.

■ A deed executed by reason of fraudulent misrepresentations is voidable, not void, and may be the basis of good title in the hands of an innocent purchaser for value. *Spikes v. Clark*, 411 S.W.2d 148, 152 [1] (Mo.1967); *Flaspohler v. Hoffman*, 652 S.W.2d 703, 709 [8] (Mo.App.1983).

■ The Supreme Court in *Dreckshage*, supra, cited *Spikes* l.c. 324, for the principle that where a Deed has been validly executed and delivered, by the grantor to a grantee even though a species of fraud was practiced upon the grantor by others,

said Deed is not void, and as between two equally innocent parties, the loss must necessarily fall upon the grantor whose conduct and misplaced confidence initially brought about the circumstances permitting the subsequent misconduct and resulting loss. Although a conveyance may be voidable for fraud in the hands of a grantee, if he has given a mortgage on the property to one who advances money in good faith and without notice of the fraud, the claim of fraud may not be set up against the mortgagee. The relief of cancellation will not be granted against a bona fide purchaser for value and without notice of the fraud or other grounds of cancellation. *Dreckshage*, supra, l.c. 324; *Hart v. Parrish*, 244 S.W.2d 105, 109 [12] (Mo. 1951).

■■■ We hold that when, as here, the Deed was not void but rather voidable, as between the grantor and the Bank as an innocent purchaser for value, the loss must necessarily fall upon the Grantor whose conduct and *misplaced confidence* brought about the circumstances permitting the subsequent misconduct and resulting loss. *Spikes*, supra.

Therefore, we reverse the judgment of the trial court and remand the cause with directions to enter a judgment reinstating the Deeds of Trust dated August 31, 1979, recorded at Book 159, Page 653 of the Shelby County Recorder's Office to secure an $18,000.00 note and dated November 28, 1979, recorded at Book 159, Page 653 of the Shelby County Recorder's Office to secure a $16,000.00 note executed by Danny E. and Linda J. Ratliff as liens on the 100 acre farm described therein. We further direct the Community State Bank of Shelbina, upon receipt of the $8,000.00 ordered to be paid it by the respondent and Danny E. and Linda J. Ratliff to the Bank, to acknowledge receipt thereof and satisfaction of the $18,000.00 note and Deed of Trust to that extent.[2]

PUDLOWSKI, P.J., and SMITH, J., concur.

2. Clarence Blaise died while this case was on appeal and Clentine Blaise, Executrix of his

■■■■■■■■■■■■■■■

Estate has been substituted as Respondent.