**BANCORPSOUTH BANK, Plaintiff/Respondent,**

v.

**PARAMONT PROPERTIES, L.L.C. et al., Defendants/Appellants.**

No. ED 95871.

Missouri Court of Appeals, Eastern District, Division Five.

June 28, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 8, 2011.

Application for Transfer Denied Oct. 25, 2011.

Paul Joseph Puricelli, Stone, Leyton & Gershman, Julie Lynette Brothers, St. Louis, MO, for Keith Barket and Paramont Properties, LLC.

John Ernest Hilton, Carmody MacDonald PC, Clayton, MO, for BancorpSouth Bank.

Gary M. Siegel, Siegel Sevastianos LLP, Clayton, MO, for Julian Hess.

## OPINION

MARY K. HOFF, Judge.

Paramont Properties, L.L.C. et. al (Paramont) appeals from the grant of summary judgment in favor of BancorpSouth Bank (BancorpSouth). We affirm.

### Factual and Procedural Background

BancorpSouth[1] filed suit against Paramont for the deficiency owed on four promissory notes (Notes) Paramont, a local developer, executed between July 12, 2006–March 23, 2007, with respect to two of its residential developments in the St. Louis area. The Notes were secured by deeds of trust on the two developments, Cambridge Hills and Heritage Farms. The deeds of trust were foreclosed upon and the properties were acquired by BancorpSouth through its credit bids. Keith Barket (Barket) and Julian Hess (Hess) (collectively Guarantors) each executed guaranty agreements (Guaranties) with respect to the repayment of the Notes. The Guarantors were also joined as defendants in the litigation.[2]

After taking the depositions of the Guarantors, BancorpSouth filed its motion for summary judgment based on Section 432.047.2, RSMo Cum.Supp.2007.[3] In its response, Paramont asserted defenses to BancorpSouth's claims based upon certain alleged oral promises of forbearance and modifications to the terms of the Notes, which, according to Paramont, negated BancorpSouth's right to pursue the deficiency that existed after the foreclosures. Paramont concedes that none of the terms of the purported promises made to BancorpSouth were ever reduced to writing.

In its order granting BancorpSouth's motion, the trial court found, "the absence of a written credit agreement setting out the terms Defendants rely on to support their affirmative defenses and counterclaims is fatal to those affirmative defenses, as well as to their counterclaims." Specifically, the trial court found that by the terms of Missouri's commercial credit statute of frauds Section 432.047, such agreements were required to be in writing in order to be effective. The trial court granted the motion and resulted in a judgment in favor of BancorpSouth in the principal sum of $3,404,550.74 plus post-judgment interest and attorney's fees. This appeal follows.

### Standard of Review

The standard of review on appeal from the granting of a motion for summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom judg-

---

1. BancorpSouth is the successor-in-interest to Signature Bank relative to the Notes and Guaranties, by virtue of its merger with Signature Bank. Originally, Paramont, a local developer, borrowed money from Signature Bank.

2. Hess is not a party to this appeal.

3. Unless otherwise indicated, all further statutory references are to RSMo Cum.Supp.2007.

ment was entered. *Id.* Summary judgment will be upheld on appeal only if this court finds that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Topps v. City of Country Club Hills,* 236 S.W.3d 660 (Mo.App. E.D.2007).

## Discussion

Paramont raises four points on appeal that are interrelated. As such, we address them together.

■ In its first point, Paramont argues the trial court erred in granting summary judgment in favor of BancorpSouth because there were genuine issues of material fact supporting a claim based on the doctrine of equitable estoppel. We disagree.

Section 432.047.2 provides that "[a] debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or other consideration, and sets forth the relevant terms and conditions." A "credit agreement" is defined as "an agreement to lend or forbear repayment of money, otherwise extend credit, or to make any other financial accommodation." Section 432.047.1. Here, there is no dispute that the agreement upon which Paramont based its affirmative defenses is a credit agreement. Under the terms of Section 432.047, to be enforceable, this credit agreement clearly had to be in writing, which it was not.

■ The doctrine of equitable estoppel seeks to foreclose one from denying his own expressed or implied admission that has, in good faith and in pursuance of its purpose, been accepted and relied upon by another. *Farmland Industries, Inc. v. Bittner,* 920 S.W.2d 581, 583 (Mo.App.

W.D.1996). There are three essential elements to such a claim: (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. *Id.* Paramont claims that "[a]ll of the elements of equitable estoppel are satisfied" such that "[a]t a minimum" a genuine issue of material fact exists thus requiring a finding that the trial court erred in granting summary judgment. Here, the trial court found that the absence of an agreement which complied with the provisions of Section 432.047 was "fatal" to Paramont's defense of equitable estoppel, as well as to their other defenses and counterclaims. Based on our review of the record in the light most favorable to Paramont, this conclusion was correct. Point I is denied.

■ In its second point, Paramont argues the trial court erred in granting summary judgment in favor of BancorpSouth because there were genuine issues of material fact supporting a claim of promissory estoppel. We disagree.

■ A claim of promissory estoppel contains four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure. *Clevenger v. Oliver Ins. Agency, Inc.,* 237 S.W.3d 588, 590 (Mo. banc 2007).

To support promissory estoppel, Paramont relies upon two of the promises they attribute to BancorpSouth: 1) the promise to provide additional funding for the Cambridge Hills project; and 2) the promise to forbear from seeking payment on the existing indebtedness owed by Paramont to

BancorpSouth. Paramont acknowledges that a third promise, the success fee in lieu of future interest, had not been agreed upon. According to Paramont, the parties were in the process of developing the agreed upon success fee for a period of five months.

■ As with equitable estoppel, the theory of promissory estoppel is no less susceptible to the mandate of Section 432.047. A claim of promissory estoppel, just as the defense of equitable estoppel, relating to a credit agreement is ineffective if not set forth in a writing that complies with the provisions of Section 432.047.2. Since no such writing exists, Paramont's claim based on promissory estoppel fails. Point II is denied.

■ In its third point, Paramont argues the trial court erred in granting summary judgment in favor of Bancorp South because: 1) Missouri's commercial credit statute of frauds does not apply to Paramont's theories of promissory estoppel and equitable estoppel since the existence of an agreement is not an element of either a claim for promissory estoppel or the defense of equitable estoppel; and 2) Missouri's commercial credit statute of frauds was not intended to nor did it expressly eliminate the common law exceptions to the statute of frauds. We disagree.

To support their position that the doctrines of promissory estoppel and equitable estoppel continue to be viable exceptions to the statute of frauds, notwithstanding the commercial credit statute of frauds enacted by the Missouri legislature in 2004, Paramont relies upon *Mika v. Central Bank of Kansas City,* 112 S.W.3d 82 (Mo.App. W.D.2003). This case pertains to the recognition of traditional exceptions to the statute of frauds, such as the doctrine of estoppel, in light of the provisions of Section 432.045.

In *Mika,* the court concluded that the recognized exceptions to the statute of frauds could still be asserted since there was no language in that statute which "either expressly or implicitly precludes the application of the established exceptions to the statute of frauds when dealing with an oral credit agreement." *Id.* at 90. In reaching this conclusion, the court in *Mika* examined the statutory language of Section 432.045, RSMo 2000, and compared it with the language of statutes passed by other jurisdictions that had an enacted a credit agreement statute of frauds. *Id.* at 90–92. In distinguishing the Missouri statute from the statutes enacted in other states, the court noted that in those other jurisdictions the credit agreement statute of frauds contained language that specifically prohibited the maintenance of an action that was "related to" an oral credit agreement. *Id.* at 93. The court went on to state that Section 432.045, RSMo 2000, did not contain such expansive language. *Id.*

A year after *Mika* was decided, the Missouri legislature passed Section 432.047, the commercial credit statute of frauds. That statute, as noted above, clearly states that "[a] debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing." Section 432.047.2. This language is a significant departure from the language of Section 432.045, RSMo 2000, and demonstrates the legislature's intent to eliminate all claims and defenses relating to a credit agreement if that credit agreement is not in writing.

Recently, in *U.S. Bank National Ass'n v. Canny,* 2011 WL 226965 (E.D.Mo.2011), the United States District Court was confronted with claims asserted by loan guar-

antors based upon alleged oral promises of a lender to modify certain commercial credit agreements relative to a series of loans. The guarantors filed counterclaims against the lender when the lender brought suit to collect the balance due on the loans. Commenting on the broad provisions of Section 432.047, the court stated that "[t]he Missouri Credit Agreement Statute acts as a statute of frauds to protect banks from losing their right to enforce a loan according to the terms of the written loan documents, if they informally attempt to accommodate debtors." *Id.* at *2. "The court concluded that Section 432.047.2 is broadly worded and bars claims 'in any way related' to a credit agreement, unless the agreement is in writing." *Id.*

The district court then went on to discuss the decision in *Mika* and the state court's finding that the inclusion of the phrase "in any way related to a credit agreement" in Section 432.045, RSMo 2000, would have had the effect of eliminating all claims based upon oral credit agreements, and that the explicit language of Section 432.047(2) accomplished this goal since "[t]his broad language abrogating claims 'regardless of legal theory' is sufficiently unambiguous to displace the common law on these facts." *Id.* at *2–*3.

Here because the defenses of promissory estoppel and equitable estoppel were based upon oral promises, they are barred under Section 432.047. Point III is denied.

In its fourth and final point, Paramont argues the trial court erred in granting summary judgment because genuine issues of material fact exist regarding whether its performance was impossible or excused based on the doctrine of commercial frustration based on the collapse of the real estate market. We disagree.

Paramont acknowledges the general rule relative to the doctrine of impossibility that when a person undertakes a contractual obligation "*he must perform it, unless its performance is rendered impossible by the act of God, by the law, or by the other party.*" *Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc.,* 300 S.W.3d 602, 609 (Mo.App. E.D.2009). Paramont also relies upon the doctrine of commercial frustration as a basis for excusing the performance that they owed to BancorpSouth. Commercial frustration is a doctrine recognized in Missouri and is utilized for the purpose of preserving the certainty of contracts. *Liquidation of Professional Medical Ins. Co. v. Lakin,* 88 S.W.3d 471, 479 (Mo.App. W.D.2002). In this case the contracts are the Notes and the Guaranties. The Notes executed by Paramont were secured by deeds of trust such that in the event of non-payment of the Notes, BancorpSouth would have the right to foreclose on its collateral. Moreover, as noted above, BancorpSouth's alleged oral promise of a twenty four-month forbearance period, is legally insufficient to support any defense or claim under Section 432.047. Point IV is denied.

### Conclusion

The judgment is affirmed.

SHERRI B. SULLIVAN, Presiding Judge and PATRICIA L. COHEN, Judge, concur.