

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| PULASKI BANK, | ) | No. ED102563 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| C.W. HOLDINGS, LLC, et al., | ) | Hon. Robert Cohen |
| | ) | |
| Appellants. | ) | FILED: May 3, 2016 |

## Introduction

Appellants C.W. Holdings, LLC, Martin Warenburg, individually and as Trustee of the Martin Warenburg Trust, Octavio Chirino, and Anne Chirino, (collectively referred to as " the C.W. defendants") appeal from the judgment of the trial court granting summary judgment in favor of Respondent Pulaski Bank ("Pulaski"). On appeal, the C.W. defendants contend the trial court erred in granting summary judgment in favor of Pulaski because Pulaski's failure to answer the C.W. defendants' counterclaim for lulling raised a genuine issue of material fact which needed to be addressed before summary judgment could properly be entered.

Because Pulaski was entitled to judgment as a matter of law on the basis of undisputed facts with respect to the C.W. defendants' counterclaim for lulling, we affirm the judgment of the trial court.

Factual and Procedural History

In 2011, the C.W. defendants signed two promissory notes ("Note One" and "Note Two") and guaranties ("the Guaranties") with Pulaski. C.W. Holdings, LLC ("C.W. Holdings") executed Note One and Note Two, while Martin Warenburg, individually and as Trustee of the Martin Warenburg Trust, Octavio Chirino, and Anne Chirino ("the Guarantors") signed the Guaranties.

## I. Pulaski's Lawsuit against the C.W. Defendants

In 2012, Pulaski filed a petition against the C.W. defendants alleging (1) breach of Note One and Note Two for non-payment; and (2) breach of the Guaranties for non-payment.

In Counts I and II, Pulaski alleged that it had performed all of its obligations under Notes One and Two, but that C.W. Holdings had defaulted on both notes by failing and refusing to pay Pulaski the amounts due. Pulaski alleged that it sent C.W. Holdings notices of default for non-payment with respect to both Note One and Note Two on June 5, 2012. Pulaski alleged that pursuant to the terms of Note One and Note Two, it was entitled to payment of all amounts outstanding on each note, all interest accrued and continuing to accrue, late fees, attorney's fees, costs, and expenses.

In Count III, Pulaski alleged that the Guarantors executed the Guaranties in favor of Pulaski, such that the Guarantors personally and unconditionally guaranteed to repay all amounts due and owing to Pulaski by C.W. Holdings. Pulaski alleged that the Guarantors had each defaulted on the Guaranties by failing and refusing to make payment to Pulaski of the amounts due. Pulaski alleged that pursuant to the terms of the Guarantees, it was entitled to payment of all amounts outstanding on the Guaranties, all interest accrued and continuing to accrue, late fees, attorney's fees, costs and expenses.

Pulaski attached copies of Note One, Note Two, the Guaranties, and the June 5, 2012, notices of default to the Petition as exhibits. The C.W. defendants subsequently filed an Answer on September 24, 2012.

## II. The C.W. Defendants' Counterclaim

On February 14, 2014, the C.W. defendants filed a Counter-Petition asserting a counterclaim for lulling against Pulaski. The C.W. defendants alleged that "on several occasions Pulaski Bank gave all counterclaim plaintiffs signs that they intended to 'work with' the counterclaim plaintiffs instead of foreclosing on them." The C.W. defendants further alleged that "on two occasions, Pulaski Bank asked for significant sums of money to redo and extend the loans in question." The C.W. defendants alleged that "[t]hese representations lulled the [C.W. defendants] into believing that Pulaski Bank would continue to keep them in the loans and allow them time to dispose of the property in a mutually agreeable manner," and that they "relied on these actions by Pulaski Bank." Pulaski did not file an answer to the C.W. defendants' counterclaim.

## III. Pulaski's Motion for Summary Judgment

On May 2, 2014, Pulaski filed a motion for summary judgment seeking summary judgment on each of the three counts asserted in its Petition as well as summary judgment in its favor on the C.W. defendants' counterclaim for lulling. With respect to the C.W. defendants' counterclaim,[1] Pulaski alleged that there were no genuine issues of material fact and that Pulaski was entitled to judgment as a matter of law. Specifically, Pulaski argued that the C.W. defendants' counterclaim for lulling was barred as a matter of law by Missouri's commercial

---

[1] On appeal, the only issue for our resolution concerns whether Pulaski's failure to answer the C.W. defendants' counterclaim for lulling prevented the trial court from properly entering summary judgment in Pulaski's favor. Our decision does not require us to review, nor do the C.W. defendants ask us to review, the propriety of the trial court's entry of summary judgment with respect to the three counts asserted by Pulaski. Thus, an extended recitation of the facts regarding those claims and the trial court's findings regarding those claims is not necessary.

3

credit agreement statute of frauds provision, Section 432.047. Pulaski noted that the C.W. defendants' counterclaim contained no reference to any written agreement between the parties affirming Pulaski's alleged "signs," "actions," or "representations." Pulaski contended that under the terms of the Notes and under Missouri law, the absence of such a writing was "fatal" to the C.W. defendants' counterclaims.

The C.W. defendants subsequently filed a response to Pulaski's motion for summary judgment and statement of uncontroverted material facts. In their response, the C.W. defendants asserted a single additional material fact which read as follows: "Plaintiff 'lulled' Defendants into paying and then failed to continue to extend credit as promised. (See counter petition and Exhibits A, B, and C.)" In each of the referenced exhibits, Anne Chirino, Warenberg, and Octavio Chirino executed affidavits stating: "I was lulled into continuing to make payments by being given a false promise that credit would be continued and extended to me," and, "[t]his lulling was intentional and outrageous."

Pulaski filed a reply memorandum in support of its motion for summary judgment, asserting that the C.W. defendants' response and statement of additional material facts "raise no issue prohibiting the court's entry of summary judgment in favor of Pulaski." With respect to the additional material fact stated by the C.W. defendants, Pulaski denied the fact and alleged that it was "completely unsupported by additional evidence" beyond the affidavits. Pulaski further stated that it had "already established" in its memorandum in support of its summary judgment motion that the claim for lulling is "barred as a matter of law pursuant to the Missouri Commercial Credit Agreement Statute of Frauds."

4

## IV. Trial Court's Order and Judgment

On September 16, 2014, the trial court entered its Order and Judgment granting summary judgment in favor of Pulaski. The trial court found that there was "no genuine issue of material fact in dispute," and that Pulaski was entitled to judgment as a matter of law "on each of its claims and in its favor on these defendants' counterclaim."

The trial court ruled in favor of Pulaski with respect to the C.W. defendants' counterclaim. The trial court agreed with Pulaski's argument that the C.W. defendants' lulling claim was barred by Missouri's commercial credit agreement statute of frauds provision, Section 432.047, concluding that "the absence of a writing evidencing such a [false promise to continue to extend credit] is fatal to Defendants' counterclaim." More specifically, the trial court held that under Section 432.047 and existing case law, "the oral representations or other actions which the Defendants claim lulled them ... provide no basis for a counterclaim against Pulaski." The trial court reasoned that "the law is very clear" that there are "no claims or defenses to a credit agreement which is not in writing." This appeal follows.

## Point on Appeal

In its sole point on appeal, C.W. contends the trial court erred in granting summary judgment in favor of Pulaski because Pulaski was in default on C.W.'s counterclaims. Specifically, C.W. argues that Pulaski's failure to answer C.W.'s counterclaim for lulling raised a genuine issue of material fact which needed to be addressed before summary judgment could properly be entered.

5

## Standard of Review

When considering an appeal from a grant of summary judgment, our review is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law. Id. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. Id. Accordingly, this Court reviews the record in the light most favorable to the party against whom judgment was entered. Id. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion, and we accord the non-movant the benefit of all reasonable inferences from the record. Id.

Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Id.; Rule 74.04. Summary judgment proceeds from an analytical predicate that, where the facts are not in dispute, a prevailing party can be determined as a matter of law. ITT Commercial Fin. Corp., 854 S.W.2d at 376. However, because summary judgment "borders on denial of due process in that it denies the opposing party his day in court," the procedure has long been regarded as "an extreme and drastic remedy" which should be utilized with "great care." Id. at 377.

## Discussion

The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases in which (1) there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant. Id. at 380. The burden on the summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine

6

dispute. Id. at 378. The non-movant never needs to establish a right to judgment as a matter of law; instead, "the non-movant need only show that there is a genuine dispute as to the facts underlying the movant's right to judgment." Id. at 381-82.

## I. Pulaski's Failure to File an Answer

The C.W. defendants contend that Pulaski's failure to file an answer to their counterclaim for lulling, as required by Section 509.010,[2] resulted in the claims contained therein being deemed admitted pursuant to Section 509.100. The C.W. defendants aver that such admissions raised a genuine issue of material fact about Pulaski's "rights in the matter," a genuine issue which needed to be disposed of before summary judgment could properly be entered. We disagree.

There is no dispute that Pulaski failed to file an answer to the C.W. defendants' counterclaim as required by Section 509.010. Nor is there any dispute that Section 509.100 specifies that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleadings." Section 509.100. However, Missouri courts have repeatedly held that "the failure to file an Answer is effective as an admission only if the plaintiff has objected to such failure ... although the filing of an Answer is mandatory, this requirement is waived unless the opposing party requests enforcement of the mandate by timely and proper action." Blaise v. Ratliff, 672 S.W.2d 683, 688 (Mo. App. E.D. 1984) (citing Cooper v. Anschutz Uranium Corp., 625 S.W.2d 165, 171 (Mo. App. E.D. 1981)); see also Mahurin v. St. Luke's Hosp. of Kansas City, 809 S.W.2d 418, 421 (Mo. App. W.D. 1991) ("This is not to say that the filing of an answer is not required; it is to

---

[2] Section 509.010 reads, in relevant part, as follows: "There shall be a petition and an answer; and there shall be a reply if the answer contains a counterclaim denominated as such." Section 509.010.

7

say that enforcement of the requirement of an answer is waived unless the opposing party invokes its enforcement by timely and proper action.").

Here, the C.W. defendants took no timely or proper action seeking to enforce the requirement that Pulaski file an answer to the counterclaim. The C.W. defendants did not, for example, seek a default judgment or a judgment on the pleadings. Nor did the C.W. defendants raise the issue in their response to Pulaski's motion for summary judgment. Instead, the C.W. defendants proceeded on the merits at the summary judgment stage having lodged no objection to Pulaski's failure to file an answer other than raising the issue during oral argument on the motion for summary judgment. By failing to object to Pulaski's failure to file an answer by a timely and proper action, the C.W. defendants waived the requirement that Pulaski file an answer. See, e.g., Cooper, 625 S.W.2d at 171 ("The record does not show plaintiff objected to defendant's failure to file an answer by seeking a default judgment or otherwise."); Blaise, 672 S.W.2d at 688 ("Clarence proceeded to trial without objecting to the failure of the Bank to file its Answer, without moving that it be required to do so, and without taking a default … He therefore waived the mandatory filing of an Answer and his complaint is without merit."); St. Louis County v. St. Louis County Police Officers Ass'n, Local 844, 652 S.W.2d 142, 145 (Mo. App. E.D. 1983) ("The record does not show … that plaintiffs objected to defendants' failure to file an answer before proceeding on the merits."). Thus, the averments contained in the C.W. defendants' counterclaim were *not* deemed admitted for purposes of Pulaski's motion for summary judgment.

8

## II. Propriety of Summary Judgment

We are therefore left to determine whether the trial court erred in concluding, on the basis of the undisputed facts, that Pulaski was entitled to judgment as a matter of law on the C.W. defendants' counterclaim for lulling.

The C.W. defendants alleged in their counterclaim that Pulaski lulled them into making payments on the Notes based on "signs," "actions," and "representations" that Pulaski would "work with" them on modifying the Notes rather than foreclosing. The *only* evidence offered in support of the counterclaim were the affidavits executed by the Guarantors, each of which stated simply "I was lulled into continuing to make payments by being given a false promise that credit would be continued to be extended to me."

The trial court concluded that the allegations outlined above, without more, "provide no basis for a counterclaim against Pulaski." Importantly, the C.W. defendants did not allege the existence of—or produce—a *writing* evidencing the false promise alleged in the counterclaim. The trial court held that the absence of such a writing was "fatal" to the C.W. defendants' counterclaim. We agree.

Missouri's commercial credit agreement statute of frauds provision, codified in Section 432.047, provides as follows:

> 1. For the purposes of this section, the term "credit agreement" means an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation.
>
> 2. **A debtor party may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing,** provides for the payment of interest or for other consideration, sets forth the relevant terms and conditions, and the credit agreement is executed by the debtor and the lender.

9

3. (1) When a written credit agreement has been signed by a debtor, subsection 2 of this section shall not apply to any credit agreement between such debtor and creditor unless such written credit agreement contains the following language in boldface ten-point type:

> "Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it."

(2) Notwithstanding any other law to the contrary in this chapter, the provisions of this section shall apply to commercial credit agreements only and shall not apply to credit agreements for personal, family, or household purposes. Section 432.047 (emphasis added).

C.W. Holdings is a commercial entity, and both Note One and Note Two contain the required statutory language quoted above in boldface ten-point type, making Section 432.047 applicable. This Court has held that Section 432.047 evinces a clear legislative intent "to eliminate all claims and defenses relating to a credit agreement if that credit agreement is not in writing." BancorpSouth Bank v. Paramont Properties, L.L.C., 349 S.W.3d 363, 367 (Mo. App. E.D. 2011). Specifically, Section 432.047 states that "[a] debtor party may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing."

Here, the C.W. defendants based their counterclaim for lulling upon alleged "signs," "actions," and "representations" that Pulaski made a "false promise" to "work with" them on modifying the Notes rather than foreclosing. The C.W. defendants never alleged or provided evidence that any such alleged false promises were contained in a written credit agreement (or in any written document at all) in compliance with the provisions of Section 432.047. As the trial

10

court correctly concluded, the absence of such a writing was fatal to the C.W. defendants' counterclaim under the clear language of Section 432.047. See BancorpSouth, 349 S.W.3d at 366 ("Here, the trial court found that the absence of an agreement which complied with the provisions of Section 432.047 was 'fatal' to Paramont's defense of equitable estoppel, as well as to their other defenses and counterclaims … [T]his conclusion was correct.").

Accordingly, Pulaski was entitled to judgment as a matter of law with respect to the C.W. defendants' counterclaim for lulling. The trial court did not err in granting summary judgment in favor of Pulaski. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa P. Page, J., concurs.

11